**STATE of Missouri, Respondent,**

v.

**Louis Andrew SCOTT, Appellant.**

**No. 54440.**

Supreme Court of Missouri,
En Banc.

July 17, 1972.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Marvin Q. Silver, Murray Stone, St. Louis, for appellant.

HENLEY, Judge.

This is an appeal from a conviction of murder, first degree, for which the jury assessed punishment at death. Sections 559.-010 and 559.030.[1]

The state's evidence is sufficient to support a finding by the jury that during the afternoon of April 28, 1967, the defendant and two companions, one armed with a sawed-off shotgun, robbed a Liberty Loan Company office in St. Louis and during the course of the robbery James Nolkemper, an employee of the loan company, was, at the direction of defendant, shot and killed by the robber with the shotgun. Defendant did not testify and offered no evidence.

Defendant contends that the trial court limited the scope of his voir dire examination as a result of which he was denied his Fifth Amendment[2] right against compulsory self-incrimination and his Sixth Amendment[3] right to trial by an impartial jury in that two veniremen, challenged by him for cause, were left on the panel al-

1. References to statutes are to RSMo 1969 and V.A.M.S.

2. Article V of Amendments to the Constitution of the United States. See also: Article I, § 19, Constitution of Missouri, V.A.M.S., § 546.270 RSMo 1969, V.A.M.S.; and Rule 26.08 V.A. M.R. The statute and rule read, in part, as follows: "If the accused shall not avail himself * * * of his * * * right to testify * * * it shall not be construed to affect * * * [his] innocence or guilt * * * nor * * *

raise any presumption of guilt, * * * nor be considered by the * * * jury * * *." The purpose of the rule and statute has been said to be to keep absolutely from the jury any reference to the constitutional right against self-incrimination. State v. Barker, Mo., 399 S.W. 2d 1.

3. Article VI of Amendments to the Constitution of the United States. See also: Article I, § 18(a), Constitution of Missouri.

though they had stated during voir dire examination that if he did not testify they would "hold this against him." The state, asserting that the matter of determination of the qualifications of veniremen is within the discretion of the trial judge, contends that he exercised sound judicial discretion in overruling these challenges for cause. We conclude that, considering the facts and circumstances of this case, the court should have sustained the challenge to one of the veniremen (Mr. Cunningham) and that defendant should have a new trial for that reason.

We said in State v. DeClue, Mo., 400 S. W.2d 50, l. c. 57, that "[m]any cases recognize that it rests within the sound judicial discretion of the trial judge to determine the qualifications of a venireman and that his decision thereon should not be disturbed unless there is a clear abuse of discretion. This does not mean, however, that this court should not and does not review the facts of each particular case, when such question is raised, to determine whether or not there was an abuse of discretion." See also: State v. Spidle, Mo., 413 S.W.2d 509; State v. Crockett, Mo., 419 S.W.2d 22, 26.

We quote the pertinent part of the voir dire examination of prospective jurors:

"MR. STONE [counsel for defendant]: * * * The defendant, Louis Scott, has a right to take the stand and he also has the right not to take the stand, and this is right whether or not. If Mr. Scott would decide not to take the witness stand, would you 'hold this against him' for any reason, Mr. Erbs? A No.

"Q Miss Theisen? A I would.

"Q Even if the Court instructs you—

"MR. FREDERICKS [counsel for the state]: One moment.

"(The following proceedings took place at the bench without the hearing of the jury panel:

"MR. FREDERICKS: The State objects to the question. There is a Statute right in point which prohibits the State from making any comment on the defendant's failure to testify. We are getting into a matter where the defense is trying to get individuals to state whether or not they have any feeling about this defendant not taking the stand. Now, if he is going to have everyone say they would have some feeling against the defendant we are going to get into an area where they will give reasons or imply reasons why he does not take the stand.

"THE COURT: I think we are getting into very thin ground.

"MR. STONE: I just want to know whether or not he takes the stand.

"THE COURT: I will permit you to ask questions of all jurors and tell them under the Law of the State the defendant is not required, the fact he does not, would any jurors hold that against him.

"MR. FREDERICKS: I object to the use of the 'hold that against'; it should be give the defendant and State of Missouri a fair trial, fair and impartial trial.

"MR. SILVER [counsel for defendant]: We don't know what the circumstances are. If he held it against him—

"MR. FREDERICKS: The question of whether or not he takes the stand at the outsit [sic], not on depending what the circumstances may be.

"THE COURT: What are you going to do?

"MR. SILVER: I would like the question as you framed it.

"THE COURT: You may do so.

"MR. FREDERICKS: I don't think we can do that.

"MR. SILVER: We already said that. What jurors would you have he would not get a fair trial.

"THE COURT: I will permit the question.)"

[End of proceedings at the Bench.]

"MR. STONE: (continuing) Mr. Brookins, if Mr. Scott were not to take the stand, would you hold this against him?

"A No.

"Q Mr. Baker?

"A It is hard to answer, but I think I would hold it against him. In my opinion, if he were innocent he would be glad to testify.

"(The following proceedings took place at the bench without the hearing of the jury panel:

"MR. FREDERICKS: This is the reason I made the objection.

"THE COURT: I think, under the circumstances, we are getting a little far afield, and I ask you proceed in the manner in which the Court suggested.

"MR. STONE: All right.)"

[End of proceedings at the Bench.]

"MR. STONE: (continuing) Mr. Cunningham, would you hold this against him? A Yes, I would.

"Q Mr. Johnson—

"THE COURT: May I say, I think we better clarify this jury now. Under the Law of the State of Missouri a defendant is not required to take the stand, the Statute specifically so provides, and if necessary the Court will instruct the jury on the mere fact he fails to take the stand is not to be used against him. The question is, will you follow the Law of the State of Missouri in arriving at your verdict in this case.

"MR. STONE: (continuing) Mr. Johnson?

"A I believe I would.

"Q Mr. Jacobs? A Yes, Sir.

"Q Mr. Beers? A Yes, Sir.

"Q Mr. Dreyer? A Yes, Sir.

"Q Mr. Van Fleet? A Yes, Sir.

"Q Mr. Brown? A Yes, Sir.

"Q Mr. Steffens? A. Yes.

"Q Mrs. Thomure? A Yes, Sir.

"Q Mr. Sullens? A Yes.

"Q Mr. Smith? A Yes.

"Q Mr. Purk? A Yes, Sir.

"Q Mr. Younger? A Yes, Sir.

"Q Mr. Sullens—

"MR. FREDERICKS: Just a minute.

"Are you still referring to the same question if he would object to his not taking the stand?

"THE COURT: The question is, will you follow the Law of the State of Missouri—

"MR. STONE: Right.

"THE COURT: And all of the instructions of the Court.

"MR. STONE: Where does that leave my question?

"(The following proceedings took place at the bench without the hearing of the jury panel:

"MR. STONE: What does that do to my question?

"THE COURT: Do you think all of these people are answering yes, they would hold it against him?

"MR. FREDERICKS: They are answering yes, they will follow the Law.

"THE COURT: And the more we go on, in the manner it is put, Mr. Fredericks' objection is probably correct.

"I will instruct this jury the defendant is not required to take the stand.

"MR. FREDERICKS: May I make a suggestion. Will you also instruct the jury the burden of guilt always rests with the State and Government, and the defendant

is never required to take the stand in his defense.

"THE COURT: Either you ask or I will.

"MR. FREDERICKS: Judge, you ask.

"MR. STONE: I still don't think it gets to the basic thing. We had one man say if he did not take the stand he would consider he is guilty.

"THE COURT: The question is further complicated, and the manner in which it is put you are, in effect, indicating there is a prejudice in not taking the stand. We will carry on as directed.

"MR. FREDERICKS: Let the record show I object to the Court's reasoning.

"THE COURT: The record may show.)"

[End of proceedings at the Bench.]

"MR. STONE: (continuing) As you all know—

"THE COURT: Pardon me. Mr. Cunningham, do you have a questions [sic]?

"MR. CUNNINGHAM: Judge, in fairness to the jurors I think you should take that whole question over again. First it was an opinion, then it was a fact.

"MR. FREDERICKS: May I ask one question?

"THE COURT: In order to be fair to everyone I will permit the question to be asked.

"MR. FREDERICKS: Very briefly, let me ask you this question, bearing in mind now that the State of Missouri, who brings the charge, has the burden of prooving [sic] the defendant's guilt; you understand that. Whether the State or Government brings the charge, they have the burden of prooving [sic], the defendant's guilt. Now, it is brought out by counsel that the defendant, according to our Statute, might not take the stand, if he does not want to. Whether he does or does not that is his business, everyone has that, and it has no bearing on the first premise of Law, that the burden of proof still rests with the State.

"Now, the question I would like to ask is this; whether the defendant takes the stand or not, what decision he makes at the end of this trial is his business, would you still require the State to carry the burden of proof in judging his guilt? Would you still require the State of Missouri to carry the burden of proof, as is always required?

"Mr. Erbs?

"A Yes.

"Q (Mr. Fredericks) Miss Theisen? A Yes?

"Q Mr. Brookins? A Yes.

"Q Mr. Baker? A Yes.

"Q Mr. Cunningham? A Yes.

"MR. FREDERICKS: Does anybody have a question along that line?

"Thank you, Your Honor.

"THE COURT: Mr. Stone, you may proceed.

"MR. STONE: What about you, Miss Theisen?

"A I don't really understand it, but if he would not testify it—

"Q (Mr. Stone) Is there anybody else who did not understand Mr. Fredericks' question? Miss Theisen?

"A I know what he means but I, don't know how to answer you.

"(The following proceedings took place at the bench without the hearing of the jury panel:

"THE COURT: I can see the way the question is being asked we are going to have a lot of trouble, we will never get a panel, and it has been clarified by Mr. Fredericks.

"What do you want to do with this woman?

"MR. STONE: We will dismiss her.

"MR. FREDERICKS: I will not agree with that.

"THE COURT: You asked to come up, what do you want the Court to do?

"MR. STONE: I want the Court to ask the question the way he started out.

"THE COURT: I think it has been covered by subsequent questions asked. Now, a number of these spoke out they understand the defendant is innocent until proven guilty.

"MR. STONE: Mr. Cunningham said he now understands, but if he don't take the stand he must be guilty.

"THE COURT: What do you want the Court to do as far as this panel is concerned?

"MR. STONE: I would like to strike Miss Theisen and Mr. Cunningham.

"THE COURT: He said he understands the defendant is innocent until proven guilty and would so be governed.

"MR. STONE: But before he stated if he doesn't take the stand he must be guilty.

"THE COURT: The question has been framed so another said he is prejudiced. And, your objection to Mr. Cunningham will be overruled.

"I am somewhat concerned about Miss Theisen.

"I am not going to let Mr. Fredericks tarry, you conclude and if Mr. Fredericks has any further questions you can again renew your challenge for cause and I will then determine whether or not it should be done.)"

[End of proceedings at the Bench.]

\* \* \* \* \* \*

"MR. STONE: \* \* \*

"Mr. Fredericks asked many times if there was any reasons any of you feel you cannot sit; is there any reason any one of you feels they cannot sit on this jury and give Mr. Scott a fair trial as to his guilt or innocence; personal or whatsoever?

"Thank you, Ladies and Gentlemen.

"MR. FREDERICKS: To that last question asked you did not raise your hand, therefore, I assume then you have no reason why you can't sit as a juror; is that correct, Miss Theisen?

"A  No.

"Q  You understand, as I mentioned before, the State or Government has the burden of proof in every case?

"A  Yes.

"Q  And in every Criminal proceeding the Statute is very clear, the defendant need not testify if he does not want to. That is a decision he makes.  Whatever he decides to do we do not know because that comes at the end of a case, but whatever he decides to do at that time you understand that should have no bearing or affect [sic], because under the Law the State has the burden of proving his guilt.  Now, will you require the State of Missouri, through myself, to prove this defendant guilty according to the Court's instruction; could you do that, Miss Theisen?  A.  Yes.

"Q  And, whatever he decides to do—

"A  I still feel, deep down in my heart, he should testify.

"Q  This is something you may not feel at the close of the case.

"Let me ask, is there any reason why you could not give both sides a fair and impartial trial as it stands right now?

"A  No.

"MR. FREDERICKS: All right.  I have no further questions.

"(The following proceedings took place at the bench without the hearing of the jury panel:

\* \* \* \* \* \*

"THE COURT: * * * Now, is there any action to be taken on the part of the defendant?

"MR. SILVER: [The defendant challenges] Number 2.

"THE COURT: I sustain that, because she has not answered the question as far as I am concerned, she said deep down in her heart she could not do it.

"MR. FREDERICKS: May I comment on that?

"THE COURT: Yes.

"MR. FREDERICKS: Defense counsel is asking what this woman would do when the defendant makes his decision. That decision cannot be made until close of the trial. This woman further testified, in the last questioning, that at this time, this stage, she knows no reason at all she could not give both the State and the defendant a fair trial.

"MR. SILVER: I object.

"THE COURT: The objection will be overruled, and she will be challenged.

"MR. SILVER: Number 5, for cause.

"THE COURT: Overruled.

"MR. FREDERICKS: I would like to state for the record, that when he was questioned and asked if the defendant did take the stand—

"THE COURT: Overruled.

"MR. FREDERICKS: He said that if he didn't take the stand he must be guilty, and for that reason I challenge him for cause.

"THE COURT: Let the record show, a proper question was asked of Mr. Cunningham and in response to that question he indicated as far as he was concerned he would follow the Law and that the defendant is innocent until proven guilty. I do not think he disqualified himself as a juror.

* * * * * *"

[End of proceedings at the Bench.]

To summarize, three veniremen said, in substance, that if defendant did not avail himself of his opportunity to testify they would consider this fact and hold it against him. Their attitude toward the possibility he might not testify in his own defense was no doubt that articulated by Mr. Baker: "* * * if he were innocent he would be glad to testify." In other words, these three were of the opinion that his failure to testify was a factor weighing against innocence which they could consider in arriving at their verdict. If either of these three, having the opinions expressed, were left on the jury, defendant certainly could not have a trial by an impartial jury.

Were the statements or explanations made direct to the jury by the trial judge and counsel sufficient in themselves clearly to remove the opinions and disqualification held by these veniremen? We have the view they were not. It is obvious from the quoted portion of the voir dire examination (particularly that part of the proceedings held at the Bench outside the hearing of the panel) that the able trial judge was alert to the disqualification and to the potential danger of error lurking in the background when Miss Theisen answered that she would hold it against defendant if he failed to testify. But the judge took no action at this point other than to suggest that counsel might proceed with the examination using essentially the same statement made and question propounded to Mr. Erbs and Miss Theisen. Neither Miss Theisen nor any other member of the panel was informed directly by the court at this point, or later, that if the defendant did not testify, this fact could not be considered by them as raising any presumption of guilt. Only after Mr. Baker and Mr. Cunningham stated they would hold it against defendant if he failed to testify did the court take over and attempt to explain defendant's rights under the Constitution and statutes. It would appear from Mr. Cunningham's re-

quest that the judge "* * * take that whole question over again * * *" that he, and possibly others, probably understood that under the law defendant was not required to testify, but it was not made clear nor certain that if he did not this could not be considered by a juror as a fact or circumstance to be used against defendant. In telling the jury that under the law defendant was not required to testify the court said that "* * * *if necessary* the court will instruct[4] the jury on the mere fact he fails to take the stand is not to be used against him * * *." (Emphasis supplied.) The court did not then nor later make it certain and clear to the panel that, although not required to do so, if defendant did not testify, a juror could not construe this as a deliberate omission inconsistent with innocence. Furthermore, since the instruction was not given (see footnote 4) along with the other instructions, the jurors could have believed that the judge had reconsidered, in light of all the evidence, and had concluded that defendant's actual failure to testify could be considered by them and used against him and had, for that reason, decided it was not "necessary" to give such an instruction.

Defendant challenged only two of the three veniremen who stated that they would hold it against him if he failed to testify and of these two, one, Miss Theisen, was excused for cause. The court overruled the challenge as to Mr. Cunningham. It is our judgment that under the facts and circumstances of this particular case a sound exercise of judicial discretion required that venireman Cunningham be excused for cause and that the court abused its discretion in not excusing him.

We do not consider or rule on the other points relied on by defendant because it is unlikely they will arise on another trial.

The judgment is reversed and the cause remanded.

All concur.

---

4. Later, at the bench, the court said to counsel, "I *will* so instruct the jury." (Emphasis supplied.) However, no such instruction was given, and it may be that the court concluded that the statute (§ 546.270) and Rule 26.08 prohibited the giving of the instruction. See State v. Denison, 352 Mo. 572, 178 S.W.2d 449, 455, and State v. Dennison, Mo., 428 S.W.2d 573, 578 [7]. We do not reach or rule the question whether the instruction should have been given, but it may be that in light of the problems presented by the voir dire examination in this case the court should reconsider the suggestion made in a concurring opinion by Donnelly, J., in State v. Hutchison, Mo., 458 S.W.2d 553, 556.