STATE of Missouri, Respondent,

v.

Edward E. THOMPSON, Appellant.

No. KCD 28200.

Missouri Court of Appeals,
Kansas City District.

July 6, 1976.

Motion for Rehearing and/or Transfer
Denied Aug. 2, 1976.

Application to Transfer Denied
Oct. 12, 1976.

Thomas M. Larson, Public Defender, Lee M. Nation, Asst. Public Defender, Sixteenth Judicial Circuit, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

A jury found defendant guilty of robbery, first degree, (Section 560.120, RSMo 1969) and his punishment was fixed at seven years confinement in the Missouri Department of Corrections.

On appeal defendant claims that he is entitled to a new trial solely by reason of

the trial judge's refusal to honor his request to excuse venireman Howard H. Moore for cause, thereby forcing him to expend one of his peremptory challenges to remove said juror.

■ This state has steadfastly hewed to the proposition that an accused in a criminal case must be afforded a full panel of qualified jurors before he is required to expend his peremptory challenges, and denial by a trial court of a legitimate request by an accused to excuse for cause a partial or prejudiced venireman constitutes reversible error. *State v. DeClue,* 400 S.W.2d 50 (Mo.1966); *State v. Land,* 478 S.W.2d 290 (Mo.1972); *State v. Lovell,* 506 S.W.2d 441 (Mo.banc 1974). This proposition is rooted in the constitutionally guaranteed right of every accused to a "public trial by an impartial jury", Mo.Const. Art. I, Sec. 18(a), and personifies a dedicated judicial effort to preserve inviolate this constitutionally guaranteed right in the broadest sense. Experience has taught that it is not always possible to objectively demonstrate juror partiality. Not infrequently, juror partiality is subtle, elusive, and highly subjective. When juror partiality is capable of being objectively demonstrated, challenges for cause have been devised as a means for achieving an impartial jury. When juror partiality is sensed, but incapable of being objectively demonstrated, peremptory challenges have been devised as a means for achieving an impartial jury. Together, they serve the ultimate goal of obtaining a jury free from the taint of both objectively demonstrated and subjectively sensed partiality. Purity of the right to be tried by an impartial jury is so zealously guarded that an accused may covet his peremptory challenges and "spend" them as he alone sees fit. Therefore, if an accused is not presented with a full panel of jurors objectively demonstrated as qualified before he exercises his peremptory challenges, his given number of peremptory challenges is proportionately reduced and his right to "spend" them as he alone sees fit is accordingly impinged. The strength and integrity of trial by jury in a criminal case lies in the composite impartiality of the jury finally selected to try a particular case, and both are eroded to an unknown extent when even a single or isolated instance of partiality creeps in, whether objectively demonstrated or subjectively sensed.

On *voir dire* examination of the jury panel in the instant case, the prosecutor elicited a show of hands from several veniremen who had previously been victims of various unrelated crimes. Venireman Howard H. Moore was among those who raised their hands. In exploring his past experience the following inquiry took place:

"VENIREMAN MOORE: About 20 years ago I was held up at 12th and Garfield at night, robbed. I *think* I could be fair in this trial, but this did happen to me.

[PROSECUTOR]: Okay. But you feel that you could give both the state and the defendant a fair trial based on the evidence alone?

"VENIREMAN MOORE: I *think* I could.

[PROSECUTOR]: Thank you, sir.

[DEFENDANT'S ATTORNEY]: Mr. Moore, I'd like to ask you a question.

VENIREMAN MOORE: Go ahead.

[DEFENDANT'S ATTORNEY]: Do you feel like if you are chosen for the jury in this case, when you're hearing the evidence come out about somebody who claims they were robbed, that your mind's going to go back to the time that you were robbed and you're going to have that on your mind?

VENIREMAN MOORE: *Well, I think that it's possible, I think that's possible. I might think about that.*

[DEFENDANT'S ATTORNEY]: Well, do you think in deliberating on this case, if you are chosen as a juror, that you might have a hard time putting your experience as a victim of a robbery out of your mind?

VENIREMAN MOORE: *I think it would be hard for me to put it out of my mind, I do.*

[DEFENDANT'S ATTORNEY]: Well, you see what I am driving at?

VENIREMAN MOORE: I do; I do.

[DEFENDANT'S ATTORNEY]: Do you think you might have some problem being totally unbiased toward this defendant in this kind of a case?

VENIREMAN MOORE: I *think* that's possible, I *think* I could, you know, listen to the evidence and be fair and impartial in this case, *but I think maybe I would think back to this time, too.*

[DEFENDANT'S ATTORNEY]: Well, we appreciate your honesty about that, Mr. Moore, thank you.

Judge, I would ask on the basis of his answers that Mr. Moore be excused for cause.

THE COURT: He's indicated his ability to try the case fairly. If you wish to question him further, you may do so.

[DEFENDANT'S ATTORNEY]: Well, those are the only questions I have for him." (Emphasis added.)

Resolution of defendant's single point is necessarily confined to the various answers that venireman Moore gave to the questions put to him by both the state and defense counsel touching upon his qualifications to serve as a juror and the reason given by the trial court in refusing to excuse venireman Moore for cause when requested to do so by defendant. By its very nature, it is an appellate resolution as fraught with substance as it is with difficulty if the right of an accused to be tried by an "impartial jury" is preserved in the broad sense that attaches to it in this state.

■ Two paramount principles well established in this state appear controlling. In no event shall a challenged venireman be allowed to pass upon his own qualifications to serve as a juror; the trial judge, rather than the venireman, is impressed with the duty of making this crucial determination. *State v. Jones,* 384 S.W.2d 554, 558 (Mo. 1964); *State v. Land,* supra, 478 S.W.2d at 292; and *State v. Lovell,* supra, 506 S.W.2d at 444. Determination of a challenged venireman's qualifications initially rests within the sound judicial discretion of the trial judge and will not be lightly disturbed on appellate review; however, appellate courts are not required to give blind deference to a trial judge's exercise of discretion in this respect and should, when the question is raised, review the record and determine whether or not the trial judge, in fact, abused his discretion. *State v. DeClue,* supra, 400 S.W.2d at 57; *State v. Land,* supra, 478 S.W.2d at 292; and *State v. Lovell,* supra, 506 S.W.2d at 443–444.

■ The only inkling which this court has as to what prompted the trial judge's refusal to excuse venireman Moore for cause is the following statement made by the trial judge: "He's [venireman Moore] indicated his ability to try the case fairly." This statement, on its face, strongly, if not conclusively, suggests that the trial judge deferred to venireman Moore's assessment of his own qualifications to serve as a juror. To read a different meaning into the statement would require a degree of insight, which this court does not claim to possess, regarding a conjecturally latent meaning. Be that as it may however, and assuming, arguendo, that the able trial judge independently passed judgment on venireman Moore's qualifications, the record discloses that venireman Moore's impartiality was so highly suspect that it cannot be lightly ignored. This observation should not be construed as an affront to venireman Moore's character or integrity. To the contrary he is to be lauded for his candor and honesty in advising court and counsel of the residual effect of his prior experience. Not once did he unequivocally state that he could impartially hear and try the case. His answers to the various questions posed to bear his mind as to the effect of his previous experience unmistakably reveal that his subconscious mind was at war with itself insofar as his ability to erase the prejudicial effect of his prior traumatic experience was concerned if selected to pass upon defendant's innocence or guilt. His answer to the final question put to him is the strongest testimonial of all in support of this conclusion.

[DEFENDANT'S ATTORNEY]: Do you think you might have some problem being totally unbiased toward this defendant in this kind of a case?

VENIREMAN MOORE: I think that's possible, I think I could, you know, listen to the evidence and be fair and impartial in this case, but I think maybe I would think back to this time, too."

This answer denotes a conscientious venireman with undeniable pangs of doubt concerning his ability to rid his mind of an understandable prejudice actuated by a prior unfortunate experience.

On the basis of the record presented, as measured by applicable and prevailing case law in this state [*State v. DeClue,* supra; *State v. Land,* supra; and *State v. Lovell,* supra], it is the considered judgment of this court that a sound exercise of judicial discretion dictated that venireman Moore should have been excused for cause.

The judgment below is reversed and the cause is remanded for a new trial.

Reversed and remanded.

All concur.